**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**RICKEY THOMAS MILLER**                                                                                             **PLAINTIFF**

**VS.**                                                      **CIVIL ACTION NO. 1:17-cv-00001-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                                                 **DEFENDANT**

**MEMORANDUM OPINION**

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the application of Rickey Thomas Miller for disability benefits under the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard oral argument, finds the Commissioner's decision denying benefits should be affirmed. The decision is supported by substantial evidence and no prejudicial error has been found.

*Facts and Procedural History*

On November 19, 2013, Rickey Miller filed his application for a period of disability and disability insurance benefits, alleging onset of disability on June 1, 2013. After the application was denied at the lower levels, a hearing was held before an administrative law judge (ALJ) on November 17, 2015. An unfavorable decision was issued on May 4, 2016. Miller's insured status expires on December 31, 2017.

The ALJ found that Miller's hearing impairment, otosclerosis, was severe. After determining that the claimant did not meet any listed impairment, the ALJ determined Miller's residual functional capacity, finding he could perform a full range of work at all exertional levels but that he could work in no more than a moderate noise-level environment. Relying on the testimony of a vocational expert, the ALJ concluded that Miller was capable of adjusting to work other than his past work experience and that such other work existed in sufficient numbers in the national economy. Therefore, he was found not disabled.

The claimant asserts the ALJ's decision is not supported by substantial evidence and is not based upon proper legal standards because the ALJ substituted his own opinions for, or misinterpreted, those of the medical and vocational experts.

## *Law and Standard of Review*

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept at adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.

*Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434(5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering

---

[1] *See* 20 C.F.R. § 404.1520 (2012).
[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[3] 20 C.F.R. § 404.1520(b) (2012).
[4] 20 C.F.R. § 404.1520(c) (2012).
[5] 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that impairment is of such severity that it would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012).
[6] 20 C.F.R. § 404.1520(e) (2012).

claimant's residual functional capacity, age, education, and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which claimant can perform, claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

*Analysis and Discussion*

In the present case, essentially a single issue lies before the court: Whether the ALJ erred by substituting his own opinions for, or misinterpreting, those of the medical and vocational experts. Claimant argues that the ALJ misinterpreted his medical records and that the ALJ analyzed the medical records and vocational testimony out of context when he found the claimant not disabled.

In 2007, 2011, and 2012, claimant was seen by Drs. Malcolm and James McAuley, ENT specialists. In December 2007, Miller presented with tinnitus in both ears, which had been ongoing for approximately one month. He complained of associated symptoms of difficulty concentrating, hearing loss, and insomnia. However, Dr. McAuley found him "[n]egative for . . . lack of concentration and psychiatric/emotional problems."[9] He was found to have chronic mixed hearing loss, and they discussed corrective surgery and hearing aids. In February 2011, Miller again presented with bilateral sensorineural hearing loss. He and Dr. McAuley again discussed the options of surgery or hearing aids. Miller opted for hearing aids. By 2012, Miller's hearing loss had progressed to moderate "with a noticed decline." He was negative for fatigue

---

[7] 20 C.F.R. § 404.1520(f)(1) (2012).
[8] *Muse*, 925 F.2d at 789.
[9] Ex. 11F.

and exhibited normal levels of consciousness. Surgery was again discussed, but Dr. McAuley explained that surgery would not cure the ringing in claimant's ears.

In 2014, claimant was examined by Dr. J. Montgomery Berry, an ENT specialist, who found that Miller had difficulty discriminating voices, as well as hearing loss and tinnitus.[10] He also found Miller positive for fatigue. Notably, Dr. Berry discussed new tinnitus hearing aids. Miller was to schedule an appointment to get fitted for these new hearing aids when he was ready.[11] Following an audiogram, Dr. Berry found claimant's hearing loss to be "moderately-severe to profound." Dr. Berry also performed a consultative examination in February 2014.[12] He reported Miller had otosclerosis in both ears, that he communicated well, and that he had moderately severe to profound mixed hearing loss.

Dr. Lucas McElwain also performed a consultative examination in February 2014.[13] Claimant complained of hearing loss and reported a diagnosis of otosclerosis and ringing in his ears which interfered with his sleep. Dr. McElwain noted that the use of hearing aids had helped to some extent but not enough to allow claimant to sleep at night. According to Dr. McElwain's report, claimant "can dress himself, feed himself, stand at one time for two hours and a total of four hours in an eight hour day. He can walk on level ground for one hour; sit for two hours. There are no limitations to his lifting. He can drive a car up to two hours. Household chores include sweeping, shopping, mopping, vacuuming, cooking, dishes, and mowing grass. He has

---

[10] Ex. 14F.

[11] It is unclear from the record whether Miller was ever fitted with these "new tinnitus hearing aids." At oral argument, claimant's attorney represented that Miller was wearing the "new tinnitus hearing aids" at the administrative hearing.

[12] Ex. 13F.

[13] Ex. 12F.

no trouble climbing stairs." At the examination, claimant was wearing bilateral, in-the-ear hearing aids. Even with those hearing aids, claimant consistently asked Dr. McElwain to repeat questions or commands and to speak in an elevated volume when not looking directly at claimant. His speech was "100 percent understandable."

Vocational Expert Charles Waldrick testified that an individual with the claimant's age and education, with no exertional limits but who could perform no work in more than a moderate noise level, could not return to past work as a welder. However, they would be able to perform other work in the national economy. Examples of jobs included produce weigher (light, unskilled, 70,000 jobs nationally), silverware assembler (light, unskilled, 107,000 jobs nationally), and jewelry stringer (light, unskilled, 22,000 jobs nationally). According to Waldrick, an individual who can do the full range of light work but who must avoid more than moderate noise could perform these jobs. However, if an audiologist or an ENT stated that the individual would never be able to avoid hazards in the workplace, "there's no occupations that person could perform." At the close of the hearing, the ALJ agreed to delay his ruling to allow claimant and his attorney to obtain such a statement.

Finally, because claimant alleged an inability to work because of depression caused by his otosclerosis, the ALJ recommended a comprehensive mental health evaluation before issuing a ruling. Prior to this evaluation, claimant had no recorded complaints or treatment of depression. In February 2016, Dr. J. Morris Alexander performed a comprehensive mental evaluation.[14] At the evaluation, Miller "sat facing, leaning in closely, looking intently and sometimes asking for

---

[14] Ex. 17F.

things to be repeated. He said he heard better when [Dr. Alexander] spoke loudly and he seemed to understand most of what was said this way." Dr. Alexander found that Miller helped clean the house and sometimes cooked. He could make the bed, change the sheets, operate the dishwasher, wash dishes by hand, sweep, mop, vacuum, and do laundry. He could make phone calls and "a little texting," but did not use a tablet or computer. "He can do yardwork. He drives. He sometimes will do a little grocery shopping." Miller told Dr. Alexander that he relied on his wife to make his appointments due to trouble hearing and understanding people on the telephone, but his wife said he was capable of doing it himself.

Dr. Alexander found claimant "was oriented to person, place, time and purpose for the evaluation. He sits close, watches closely, and sometimes turns his head to hear. He asks for things to be repeated sometimes. Speech was at normal rate and volume, logical and coherent, with some humor." Although his affect was "somewhat depressed," Miller denied any history of hallucinations or suspiciousness. He knew the current and past presidents.

> He was fair but limited in abstraction to proverbs and in responses to questions requiring social judgment. Simple addition, subtraction[,] and multiplication were correctly performed but not division. [Two] of [four] words were recalled after several minutes. Recall of digits forward was within normal limits though done with great difficulty, but reverse was below average. Sleep is disrupted by the ringing in his ears.

Miller stated he often felt like crying and was depressed during the examination. He had a history of suicidal thoughts but no attempts or fully formed plans. Dr. Alexander believed he was able to independently manage finances. He also determined that Miller "appear[ed] unable to perform routine repetitive tasks due to fatigue, but he seems to have the requisite skills." The ALJ gave little weight to Dr. Alexander's opinion regarding the effects of Miller's fatigue on his ability to work based on the lack of record evidence to support the level of fatigue ascribed. The ALJ concluded Dr. Alexander's opinion was "based primarily on the claimant's subjective complaints."

In November 2015, Dr. Berry wrote a short letter "specifically directed toward Mr. Miller's medical condition and his ability to work."[15] Dr. Berry reaffirmed Miller's diagnosis of otosclerosis, causing mixed hearing loss, and then generally described how hearing loss *could* affect an individual:

> Because of this loss, it does make him have great difficulty discriminating voices as well as understanding conversation. The questions that I was asked to answer [are] 1. Was he able to avoid danger? 2. Is he a danger to himself? 3. Is he a danger to others at the workforce?
> Specifically, if Mr. Miller has difficulty hearing any things that are coming, it could certainly affect his ability to avoid danger and help others avoid danger. Any hearing loss that is significant could certainly impair one's ability to be gainfully employed.

Claimant argues the letter from Dr. Berry was a statement by an ENT that Miller could never avoid hazards in the workplace, and that consistent with the testimony of the vocational expert, there were no jobs he could perform in the national economy and was therefore disabled. While Dr. Berry posed three questions, he failed to answer any. He did not state whether Miller was "able to avoid danger." Instead, he stated that *if* Miller has difficulty hearing things that are coming, it *could* affect his ability to avoid danger. He did not, however, state that Miller was unable to avoid danger and certainly did not state that he could never avoid danger. His brief statement was, as the ALJ found, "broad as it relates to hearing loss and does not specifically address the limitation derived from the claimant's impairments[.]"

During the consultative examination, Dr. Berry gave the opinion that claimant should function well with amplification (hearing aids) and claimant testified that the hearing aids had helped his hearing some but that the ringing would not stop. Claimant and his wife both testified

---

[15] Ex. 15F.

that the ringing was worse at night—that it was so bad, it kept claimant from sleeping which made him unable to function the next day. Similar subjective complaints led to Dr. Alexander's statement that claimant could not perform repetitive tasks due to fatigue. However, the ALJ found—consistent with the medical records and claimant's self-reporting—that claimant could perform extensive activities of daily living. Miller stated he performed household chores, cooked, drove a car up to two hours, and mowed the lawn. He went to church and attended sporting events. Additionally, claimant was prescribed Ambien to help him sleep. According to him, although the Ambien helped, it caused him to have suicidal thoughts so he stopped taking it. However, treatment records indicated that he tolerated the Ambien well and document no complaints of side effects.[16] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *See Selders,* 914 F.2d at 617.

      Finally, at oral argument, claimant asserted his otosclerosis-induced fatigue impacted his concentration, persistence, and pace to the point of being disabling. However, that claim was thoroughly addressed by the ALJ, whose decision is supported by substantial evidence in the record. Dr. Alexander's mental health evaluation found claimant to be alert and oriented with normal consciousness. He could perform basic mathematical functions (except for division), could recall a sequence of numbers forward, and could recall fifty percent of words after a delay. Thus, the ALJ found he had mild limitations as to concentration, persistence and pace. Additionally, the ALJ noted that all of claimant's medical evaluations were completed

---

[16] Ex. 6F; Ex. 8F.

successfully with no notes of unreasonable delay. While accommodations had to be made for claimant at the hearing so he could sit closer to the ALJ to be able to hear, the hearing also proceeded successfully. Claimant was alert and oriented at the hearing. In light of this evidence, the ALJ found that claimant's claims of debilitating fatigue were not supported by the evidence. On an independent review of the evidence, the court finds the ALJ did not err in his assessment.

## *Conclusion*

The court finds, therefore, that substantial evidence supports the ALJ's decision in this matter, and it is thus affirmed. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 3rd day of October, 2017.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE